†ADAM AND HENRY KNORR EX REL. v. MILLER ET AL.

1. To Enjoin Grant to one not the Lowest Bidder Plaintiff need not be an Abutting Owner.

The authority of a taxpayer to institute a suit in his own name on behalf of a municipal corporation, under sec. 1778 Rev. Stat., depends upon the fact whether the solicitor of the corporation has refused, after being requested in writing, to bring the suit, and the fact whether the party is a taxpayer. The plaintiff taxpayer need not be an abutting owner. It is not to protect any right peculiar to the taxpayer, but to protect a right that belongs to the city.

2. Validity of Contract Depends upon Bid to Carry at Lowest Rate on Fare

The question whether a valid contract has been made by the city with a party for the construction and operation of a street railroad route under sec 2502 Rev Stat. depends upon the fact whether such party in his bid agreed to carry passengers at the lowest rates of fare. A grant of a route to one not the lowest bidder is void.

3. Consents of Abutters Inure to Benefit of Lowest Bidder

The consents of abutting property owners to the construction and operation of a street railroad route required under the statute, by whomsoever obtained, inure to the benefit of the lowest bidder To permit the abutting owners to dictate to which of

---

†This judgment was affirmed by the supreme court without report, January 26, 1892. Cited in Gallagher v. Johnson, 1 Dec., 264, 265; Cincinnati v. Cincinnati St. Ry. Co., 1 Dec., 591, 596· Glidden v. Cincinnati, 4 Dec., 423, 426.

the bidders their consents shall inure would be to permit them to absolutely control the award of the contract. which the statute requires shall be settled by competition in rates of fare only.

4. WHEN COURT WILL NOT INVESTIGATE OBJECTIONS TO LOWEST BID

Where the lowest bid was rejected because of an alleged want of consents from abutters, the court will not investigate objections to it not made before nor passed upon in the award, on the ground that it was a sham bid.

SWING, J.

This court, in passing on the demurrer of defendant Miller to the reply of plaintiffs to the supplemental answer and cross-petition of defendant Miller, made the following statement in regard to the pleadings as they then existed, to-wit:

The plaintiffs brought this action in their own names on behalf of the city of Cincinnati, having first made application to the city solicitor, who refused to bring the action The petition was filed January 2, 1891. The allegations of the petition are, in substance:

1. That the plaintiffs are taxpayers owning real estate in the vicinity of the street railroad Route No. 23.

2. That an application was made by Isaac J. Miller for the establishment of a street railroad route along certain streets therein set out. That an ordinance was passed by said city council establishing said railroad route to be known as Route No. 23. After stating the conditions of said ordinance, the petition alleges that:

3. Advertisement was made for sealed proposals for the operation and construction of said road; that said proposals were required to specify the amount of single cash fare, the number of commutation tickets to be sold for $1.00, the number for fifty cents, and the number for twenty-five cents.

4. That in pursuance of the same two bids were made. and no more, Simeon M. Johnson and Isaac J. Miller being the bidders. Said Johnson's bid was: cash fare, adults, five cents; children under ten years, three cents; commutation tickets, thirty tickets for $1.00, fifteen for fifty cents, and seven for twenty-five cents. Miller's bid was: a single five-cent fare. either in cash or tickets. That the bid of said Johnson was the lowest.

5. That said proposals were opened by the board of public improvements on October 2, 1890, the city of Cincinnati having delegated to said body the duty of receiving and opening said bids and ascertaining which of the persons bidding proposed to carry passengers for the lowest fare, and further authorizing said board to prepare and transmit to council an ordinance setting forth the name of such person making such proposal, and granting to such person the right to construct and operate such street railroad route.

6. That said board of public improvements inserted the name of Isaac J. Miller in such ordinance, granting said route to him as the lowest bidder therefor, and transmitted the same to council with the recommendation that it be passed. That council passed said ordinance, and that the same was approved by the mayor of said city, and by the board of city affairs, and that the same has become operative as far as it legally may.

7. That the said Isaac J. Miller, and Thomas G. Smith as president of said board of city affairs, will at once enter into a contract for the construction and operation of said Route No. 23, and said Isaac J. Miller will proceed to construct and operate said route.

8. That said contract will be in contravention of the laws of the state of Ohio and the ordinances of said city, for the reason that said Miller was not the person who proposed to carry passengers at the lowest rates of fare. but that said Johnson was the lowest bidder.

9. That the execution and performance of said contract would be a great and irreparable injury to said city and to the taxpayers and to these plaintiffs.

Wherefore, plaintiffs ask that said defendants be enjoined from the entering into said contract and the performing of the same.

The defendant Isaac J. Miller, on February 2, 1891, filed an answer in which he alleged that he applied to have said Route No. 23 established, and that it was established by ordinance. That the board of public improvements advertised for bids to construct and operate the same; that he made a bid as required by sec. 2502 Rev. Stat.; that said Simeon M. Johnson did not bid as required by law, and did not bid in good faith, and that he refused to comply with the law in making said bid, and that he abandoned said bid before any consents of property owners on said line of said route were filed; that the board of public improvements transmitted to the city council, with a recommendation for passage, an ordinance granting to said Miller the right to construct and operate said route No. 23, which ordinance was passed by said council, and the same was approved by the mayor and by the board of city affairs (which board had succeeded the board of public improvements), and that a contract had been entered into between said city and said Miller under and by virtue of the same.

To this answer plaintiffs filed a reply denying that said Johnson had made said bid in bad faith, and had abandoned the same.

On this issue trial was had in the court of common pleas, the court rendering judgment on February 2, 1891, finding the allegations of the petition to be true. That said contract was in contravention of law, and, therefore, void, and granting the injunction prayed for. Notice of appeal was given, and an appeal was perfected on February 3, 1891.

After the case came into this court, defendant Miller filed a supplemental answer and cross-petition, alleging, in addition to what had been stated, that the city of Cincinnati was a city of the first grade of the first class; that prior to April 10, he had entered into said contract to construct and operate said Route No. 23; that said Simeon M. Johnson had failed and neglected to obtain and file the written consent of any of the property owners on the line of said route. That by force and effect of an act of the legislature of Ohio, which was passed and took effect April 10, 1891, which is as follows:

"Section 1. That in all cases where, in cities of the first grade of the first class, the council has heretofore, by ordinance, established any street railroad route and declared the conditions upon which a street railroad should be constructed and operated upon and along such route, and due publication of a notice has been made calling for proposals to construct and operate such street railroad to be awarded to any corporation, individual, or individuals that should agree to carry passengers thereon at the lowest rates of fare, and the proposal of a bidder who obtained and filed the written consents of the owners of the majority of the feet front of property of such street on the line of the route, has been accepted thereon. and an ordinance passed granting to such bidder the franchise to construct and operate such street railroad, and such bidder has accepted the same, and entered into a written contract with such municipal corporation to construct and operate such street railroad, said ordinance and grant, contract and franchise shall be deemed and held in all respects to be valid and binding, notwithstanding the submission of another bid at such letting, by a bidder proposing to carry passengers on such route at a lower rate of fare, who failed and neglected to obtain and file the written consents of any of the property owners on the line of said route;" and he asks that said injunction be dismissed.

The plaintiffs replied, alleging that the ordinance never took effect; that said city never entered into a written contract with said Miller to construct said route; that it was never approved by the board of public improvements; that they admit that said Miller and said Thomas G. Smith as president of the board of city affairs, which said board was created by the act of October 24, 1890, executed a written document on or about January 3, 1891, purporting to be said contract, but they say the said act was unconstitutional, and that said contract is not the binding contract of said city; that there is not, and never has been, any city of the first grade of the first class in Ohio other than the city of Cincinnati.

The plaintiffs also filed an amendment to this petition, alleging that under the ordinance of said city, passed February 7, 1879, the owner of every street railroad is required to pay into the city treasury, in addition to the car license of $4.00 per lineal foot of each car, two and one-half per cent. of the gross earnings of such street railroad, and that such ordinance is now in full force.

The defendant Isaac J. Miller filed a general demurrer to the amended reply and answer of the plaintiffs to defendant's supplemental answer and cross-petition.

Afterwards, on June 11, defendant Miller filed a second supplemental answer setting out at length the action of the board of public improvements, and of the council of said city and of himself in relation to an extension of said Route No. 23; the substance of which is that a valid extension of said route has been granted to him by the said municipal bodies. On the same day the plaintiffs filed a reply, in which they deny each and every allegation contained in said second amended answer.

The court having overruled the demurrer of defendant to the reply of plaintiffs, the questions remaining to be decided were, whether a valid contract had been entered into between said city authorities and said Miller, and whether said plaintiffs could maintain the action.

The facts in regard to the latter question, as shown by the evidence, are: The city solicitor was requested, in writing, to bring the action, but declined to do it. The plaintiffs are taxpayers residing in said city and owning real estate not on the immediate line of said road, but some 350 feet away from it.

Under sec. 1777 Rev. Stat. it is made the duty of the city solicitor to "apply in the name of a corporation to a court of competent jurisdiction for an order or injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same."

Section 1778 Rev. Stat. provides that "in case he fail, upon the request of any such taxpayer of the corporation, to make the application provided for in the preceding section, it shall be lawful for such taxpayer to institute suit for such purpose in his own name on behalf of the corporation, provided that no such suit or proceeding shall be enter-

The object and meaning of those sections, it seems to us, is to preserve the municipal corporation its rights. By sec. 1777, it is the duty of the city solicitor to bring such action. By sec. 1778, if he fails, upon written application, to bring such action, then a taxpayer may do so. It is not to protect any right peculiar to the taxpayer, but to protect a right that belongs to the city; and the right of the taxpayer to maintain the action depends upon whether the solicitor has refused, after being requested in writing, to bring the suit, and the fact whether he is a taxpayer.

We do not understand the decision in Bunning v. Railway Co., 1 Ohio Circ. Dec. 178, to be in conflict with this view.

As to the other question, whether a valid contract had been made between said city authorities and the defendant Miller, it depends upon the fact whether or not Miller was the lowest bidder, or whether his bid was the one which agreed to carry passengers at the lowest rates of fare. Section 2502 Rev. Stat. provides, * * * "and no such grant as mentioned in said preceding section shall be made except to the corporation, individual or individuals, that will agree to carry passengers upon such proposed railroad at the lowest rates of fare." * * * Here is clearly placed a limit on the power of council to grant the right to construct and operate a street railway.

The material facts in this case, as shown upon the trial, are: The ordinance of council establishing said route No. 23, passed September 5, 1890, sec. 6 of which provided "that the city clerk is hereby directed to advertise for sealed proposals to construct and operate said street railroad as established in this ordinance, in manner as provided in section 2 of said general ordinance, passed February 7, 1879, and in pursuance to the statutes of the state of Ohio.

Section 2 of the ordinance of 1879 provided as follows: "Upon the filing of such application the board of public works shall notify the city clerk thereof, who shall give notice of such application by publication for three consecutive weeks. At the expiration of such publication, the board of public works shall consider the application, and shall transmit to the common council such recommendation as they may deem proper, together with an ordinance establishing the route, and with a resolution requiring the city clerk to advertise for sealed proposals to construct and operate said street railroad with such modifications as the board may recommend, at the lowest rate of fare, in accordance with the terms, conditions and stipulations of this ordinance; proposals to specify the rates of single cash fare, the number of commutation tickets in packages to be sold for one dollar, the number of commutation tickets in packages to be sold for fifty cents, and the number of commutation tickets in packages to be sold for twenty-five cents; to be addressed to the board of public works, and opened by them at a day and hour to be named in the advertisement."

Advertisement was made in pursuance with said ordinance, and two proposals were made, one by the defendant Miller, and the other by Simeon M. Johnson These proposals were opened by the board of public improvements on the 2d day of October, 1890, and were found to be as alleged in the petition, Johnson's being the lowest.

The following proceedings were had in relation to said proposals, or bids, by the said board:

"Page 550 * * * Cincinnati, O. October 10, 1880. The committee of the whole submitted a partial report as follows:

"We report that the owners of more than one-half of the front feet of the lots and lands abutting on Warner street have refused to give their written consents to the construction of the inclined plane on Warner street in front of their respective lots and lands, and we therefore recommend that the successful bidder shall have the right to change and build that portion of the road by an inclined railway on private property."

Which was adopted by the following vote:

Ayes—Donham, Ellison, Kerper, Montgomery and Mr. President."

Page 560 * * * Cincinnati, O., October 14, 1890.

The committee on streets, to whom was referred the bid of Simeon M. Johnson for Route 23, submitted the following report:

"We report that Simeon M. Johnson has had a reasonable time to obtain the consents of the property owners of the lots and lands abutting the streets along which street

railway Route 23 is established, and that he has wholly failed and neglected to obtain them. We also report that the owners of a majority of the feet front of the lots on Fairview avenue appeared before us and refused under all circumstances to give their consents to said Simeon M. Johnson.

"We therefore conclude that he is not able to obtain said consents, and

"We therefore reject his proposition to construct and operate said Route 23. This report is made following the opinion of the solicitor.

(Signed)                                        LOUIS REEMELIN, Chairman."

The same committee submitted the opinion of the city solicitor in which he is of the opinion that the bid of Simeon M. Johnson should be rejected, he not being able to obtain consents for Route 23.

On motion, the communication was ordered filed after being spread upon the solicitor's opinion book.

The same committee submitted the protest of Simeon M. Johnson, and asked that the same be spread upon the minutes, which read as follows:

October 13, 1890.

"To the Honorable Board of Public Improvements of Cincinnati, Ohio.:

"Gentlemen—As a bidder, and undoubtedly the lowest bidder for Street Railroad Route No. 23, I respectfully protest against the proposed resolution now under consideration by you, by which it is proposed to reject my bid because of the alleged fact recited therein that the owners of the majority of the front feet of lots on Fairview avenue have appeared before you and refused under all circumstances to "give their consents to me" and because it is alleged therein that I have not procured any private property on which to construct the inclined plane that is necessary to be constructed as part of said route.

"My reasons for so protesting are as follows:

"My only competing bidder, Mr. Isaac J. Miller, is himself the owner of a majority of the front feet on Fairview avenue, the members of his immediate family owning a large portion of the remainder. Their refusal is not to the construction of said street railroad route in that street, to which they in fact consent, but to its construction by anybody except Isaac J. Miller. The consent required by law and the ordinance of the city, is consent to the building of the railroad, and not to its building by any particular person. The only right of abutting property owners is to consent or refuse to consent to the establishment of the route. The majority of them have consented, although the evidence of such consent is purposely withheld from this board by my competitor. To permit the abutting owners to dictate to which of the bidders their consents shall inure is to permit them to absolutely control the award which the law requires to be settled by competition in rates of fare only.

"Either such owners have not consented at all, in which case you cannot proceed further, or they have consented, in which case their consents inure to whoever is the lowest bidder, as was expressly decided in State v. Bell, 34 O. S. 194, page 197, where it is said: 'For a contract can be awarded to him alone (*i. e.* the lowest bidder), and the consents it matters not of whom obtained or to whom given, are in substance assents to the construction and operation of the railway in the designated streets, and hence must inure to the benefit of the lowest bidder.'

"The resolution proposed which was presented by my competitor, recites that I have had a reasonable time to obtain such consents, and that I have wholly failed and neglected to obtain them. So far as any evidence of such consents is concerned, my competitor has also had a reasonable time to obtain them, and has wholly failed and neglected to file them. I claim, that not only in fairness, but in law, proceedings shall cease here until such consents are filed, because until then you have no evidence that such consents have been given. And my competitor, therefore, is in the same position as I am said to be by this resolution. I protest against your acting upon my bid before you also act upon his.

"In short, I claim that this matter of consents is being juggled by my competitor to prevent the public from reaping the benefits of the competition required by law. Furthermore, to exclude my bid now, as is proposed, is in effect to make the award now to my competitor in advance of any consents having been filed before this board, which is in direct violation of the law.

"It is proposed by the resolution which my competitor has presented, to find that I have not procured any private property on which to construct the inclined plane in Warner street. Upon what evidence it is proposed to make this finding, I am not advised. On the contrary, I now state to the board, and am prepared to furnish proof, that I have procured, and now hold, the necessary contracts for the purchase of private property required for said inclined plane, if the same is to be built on private property.

"For these reasons I protest against the proposed resolution, which is simply an attempt to ignore the law and take away my rights in the interest of a much higher bidder.

"Respectfully submitted,

(Signed)        SIMEON M. JOHNSON."

The same committee reported the following resolution at the request of Simeon M. Johnson:

"Resolved, That no further action be taken by this committee on Route No. 23 until the consents of the property-holders on the line of said route to the construction thereof have been first filed with this board."

The resolution was lost.

The same committee further reported as follows:

"Whereas, Simeon M. Johnson reported that he was unable to procure the necessary consents required by law, of owners of lots and lands abutting the streets on Route No. 23 of street passenger railroads, established by Ordinance No. 50, and his bid having therefore been rejected,

"We therefore report, following the decision of the city solicitor, that I. J. Miller is the lowest bidder for the right to construct and operate said Route No. 23, and recommend that he be given five (5) days to procure the necessary consents, and that the engineers examine and report on the same as they are filed without delay.

(Signed)　　　　LOUIS REEMELIN,
Chairman of the Committee of the Whole."

Messrs. Kemper and Ellison asked to have the following explanation of their vote entered upon the minutes, which was agreed to:

"We vote for the rejection of the bid of Simeon M. Johnson under the decision of the city solicitor, but with the belief that the precedent adopted, that the award shall be to the lowest bidder who has obtained the consents, and that such consents shall inure to the benefit of such bidder alone, will in the future prevent competition in the granting of street railway franchises."

*　　　　　*　　　　　*　　　　　*　　　　　*

"An ordinance granting Isaac J. Miller the right to construct and operate Route No. 23 of street passenger railroads was read, approved, and ordered transmitted to council with recommendation for its passage."

Afterwards council passed an ordinance granting the right to construct and operate said road to said Miller, and directed the president of said board to enter into a contract with said Miller for the same.

Considerable oral evidence was heard upon the trial of the case, but we do not deem it of importance so far as the determination of this action is concerned. The validity of the acts of the board of public improvements and of council must rest on the official action of these boards as shown by their proceedings, as no attempt has been made to impeach these proceedings.

Was Johnson a bidder in fact; such a bidder that the board of Public improvements was bound to consider him as such when passing on Miller's bid? If so, the action of the board in awarding the contract to Miller was wrong, for it is admitted that Johnson's bid was lower than Miller's.

Several reasons are urged why Johnson's bid should not be considered as standing in the way of the acceptance of Miller's bid.

One is, that after the bid of Johnson was rejected by the said board, he failed to tender the bond required, and to pay the $100 as required, and that he virtually abandoned his bid by reason thereof, and that then there remained only Miller's bid for the board to consider; but we cannot see how this position can be maintained. The board rejected Johnson's bid for the reason stated in their records. Johnson filed his protest with the board, claiming their action was not authorized, and insisting on his rights. He did not acquiesce in their action, or withdraw his bid. As far as he could, he was asserting his right to be considered a bidder, and to have the contract awarded to him. His bid was before them, and he was there insisting on his right to be considered a bidder, but the board rejected it, and refused to consider his bid. The fact that Johnson did not tender the bond, and pay the $100 as required, might have some bearing on a question as to whether Johnson could maintain an action to have the contract awarded to him; but we cannot see how this question can affect the question before us now, which is, was the action of the board right? This depends on whether the board had a right to reject the bid of Johnson. We are of the opinion that the board could not legally reject Johnson's bid for the reason given. Our supreme court has decided, in State v. Bell, 34 O. S. 194: "And the consent mentioned in the last mentioned section, by whomsoever obtained, inures to the benefit of the lowest bidder." If we are disposed to question

the correctness of this construction of the law, we would still be bound by it. What the board in effect decided here was that, because Johnson could not procure the consents himself, he should not be considered a bidder. This is in direct conflict with the decision of the supreme court.

But an effort was made in the trial of the case to show that Johnson's bid was made in bad faith, or he was a sham bidder, and it was claimed that the board had a right to reject his bid on that account. It is sufficient to this to say, that the board did not reject Johnson's bid on that ground. The rights of the parties here must be determined by the action of the board upon the ground shown by their record. But we might say, further, that we do not think the board would have been justified in rejecting Johnson's bid for such reasons. He was not a sham bidder. Johnson was bidding in earnest; wanted his bid considered to be a bid, professed to be able to comply with the terms required of a bidder, and of all of which facts the board well knew. And these facts made him a bidder in good faith, so far as bidding was concerned, and this was as far as the board could look. If Johnson complied with the terms of the bid, it was the end of the consideration of the board. Whether Johnson was bidding in the interest of some one else, whether he could build the road and operate it and make or lose money, whether he was building to benefit or injure any one, were questions about which the board could have no concern. The board was there to look after the rights of the public, and that was to be brought about by granting the contract to the lowest bidder.

It was urged in argument that the contract to build and operate the road could only be made by ordinance of council, and that Johnson should have submitted his bid to council, and that Miller's was the only bid submitted to council, and was therefore, the lowest; but we do not see how any such duty was thrown upon Johnson. Council had prescribed the mode and manner in which the building and determining of the bids should be done, and appointed its agents to perform these duties. What Johnson did was in conformity with these rules and requirements of council, and we think that council is bound in the matter by the acts of their agent, the Board of Public Improvements.

We have been asked to reconsider our judgment given upon the demurrer heretofore as to the validity of the act of the legislature, of April 10, 1891. We have again gone over the question and examined the authorities of our supreme court, and, while we consider the question as one not free from doubt, our present opinion is that our former holding is correct.

The injunction is allowed.

Burch & Johnson, Edward Colston, Lawrence Maxwell, for plaintiffs.

J. B. Foraker, Alfred Yaple, I. J. Miller, for defendants.